IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**SHANE HOLBROOK,**

      **Plaintiff,**

v.                                                                 Case No. 3:21-cv-00170

**ADMIN. ALDRIDGE, et al.,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

      Pending before the Court is Plaintiff's Complaint filed pursuant to 42 U.S.C. § 1983, (ECF No. 2). In keeping with 28 U.S.C. § 1915(e)(2), the undersigned has conducted a preliminary review of Plaintiff's complaint to determine if the action is frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Although *pro se* complaints, such as the one filed in this case, must be liberally construed to allow the development of potentially meritorious claims, the court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion,* 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). At the same time, to achieve justice, the court may allow a *pro se* plaintiff the opportunity to amend his complaint in order to correct deficiencies in the pleading. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978).

1

Plaintiff names the following defendants: Western Regional Jail and Correctional Facility's ("WRJ") Administrator Aldridge; Major Fleming; Captain Diamond; Captain Reed; Lieutenant Phillips; Sergeant Akers; Sergeant Allen; Sergeant Kringle; C.O. Racer; Detective Wallace; C.O. Romans; Albright; Endicott; Preece; 2 unknown Huntington Police Department ("HPD") officer; and Officer Miller. He makes the following allegations against each defendant:

1. Administrator Aldridge—Aldridge was superintendent of the WRJ when Captain Diamond gave Richard Roseberry an incident report and allowed him to wear the uniform of a correctional officer and pose as an officer at the WRJ. (ECF No. 2 at 4). Roseberry is the ex-husband of Holbrook's fiancée.

2. Major Fleming—Fleming altered video surveillance. (*Id.* at 4).

3. Captain Diamond—Diamond gave Richard Roseberry an incident report and allowed him to wear the uniform of a correctional officer and pose as an officer at the WRJ. (*Id.* at 4). Diamond allowed two cousins to have sex in front of Holbrook. (*Id.*). Diamond came to the WRJ while Holbrook was being booked on false charges. (*Id.* at 7). Diamond shoved Holbrook when he was wearing full restraints and was complying with Diamond. (*Id.* at 9).

4. Captain Reed—Reed allowed two cousins to have sex in front of Holbrook. (ECF No. 2 at 9.). Reed concocted false charges against two other inmates, who were romantically involved with Reed's family member. (*Id.* at 8)

5. Lieutenant Phillips—Phillips came to the WRJ while Holbrook was being booked on false charges. (*Id.* at 7). Phillips refused to book Holbrook until Richard Roseberry could speak with his ex-wife, who is now Holbrook's fiancée. (*Id.*)

6. Sergeant Akers—Akers told Holbrook that there was another inmate in the

2

WRJ who was there on false charges. (ECF No. 2 at 7). Akers assisted another correctional officer in moving Holbrook to a different cell. (*Id.* at 8).

7. Sergeant Allen—Allen rode with HPD officers to attack Holbrook, but instead, arrested him on false charges, extorted him to take a plea, tortured him by placing him in segregation, and denied him basic human rights.. (*Id.* at 4-5). Allen allowed Richard Roseberry and his cousin, Lisa Grubb, to roam the halls at the WRJ. (*Id.* at 7).

8. Sergeant Kringle—Kringle rode with HPD officers to attack Holbrook, but instead, arrested him on false charges, extorted him to take a plea, tortured him by placing him in segregation, and denied him basic human rights. (ECF No. 2 at 4-5).

9. C.O. Racer— Before Holbrook was scheduled to meet with his lawyer, Racer told Holbrook to keep his mouth shut about the sexual misconduct and other abuses occurring at the WRJ. (*Id.* at 9).

10. Detective Wallace—Wallace altered video surveillance. (ECF No. 2 at 4). Wallace also rode with HPD officers to attack Holbrook, but instead, arrested him on false charges, extorted him to take a plea, tortured him by placing him in segregation, and denied him basic human rights. (*Id.* at 4-5).

11. C.O. Romans—Romans rode with HPD officers to attack Holbrook, but instead, arrested him on false charges, extorted him to take a plea, tortured him by placing him in segregation, and denied him basic human rights. (*Id.* at 4-5).

12. C.O. Albright—Albright rode with HPD officers to attack Holbrook, but instead, arrested him on false charges, extorted him to take a plea, tortured him by placing him in segregation, and denied him basic human rights. (*Id.* at 4-5). Albright denied Holbrook showers and gave him empty food trays whenever Albright worked the segregation unit. (*Id.* at 9).

13. C.O. Endicott—Endicott rode with HPD officers to attack Holbrook, but instead, arrested him on false charges, extorted him to take a plea, tortured him by placing him in segregation, and denied him basic human rights. (ECF No. 2 at 4-5). Endicott came to the WRJ while Holbrook was being booked on false charges. (*Id*. at 7).

14. C.O. Preece—Preece rode with HPD officers to attack Holbrook, but instead, arrested him on false charges, extorted him to take a plea, tortured him by placing him in segregation, and denied him basic human rights. (*Id*. at 4-5). Preece allowed Richard Roseberry and Lisa Grubb to roam the halls at the WRJ. (*Id*. at 7).

15. Two unknown HPD officers—These officers rode with other HPD officers to attack Holbrook, but instead, arrested him on false charges, and extorted him to take a plea. (ECF No. 2 at 4-5).

16. Officer Miller—Miller rode with HPD officers to attack Holbrook, but instead, arrested him on false charges and extorted him to take a plea. (*Id*. at 4-5). Miller drove Holbrook to the WRJ. (*Id*. at 7).

Holbrook asserts that Richard Roseberry, who has family members in law enforcement, plotted to kill Holbrook, but instead conspired with some of the defendants to have Holbrook arrested on false charges, which alleged that Holbrook had harmed Roseberry's children. (ECF No. 2 at 6). A group that included Defendants Wallace, Albright, Romans, and Endicott showed up at Holbrook's home, but he scared them away. (*Id*. at 6). They returned, and when Holbrook opened the door, Wallace, Albright, and Romans rushed him. (*Id*.). Officer Miller put Holbrook in a squad car and took him to the WRJ. (*Id*. at 7). Romans began to book Holbrook into the WRJ, when Defendants Phillips, Diamond, and Endicott, and Richard Roseberry, appeared. Roseberry was wearing a correctional officer's uniform. (*Id*.). Brewer, Endicott, and Roseberry proceeded to "grill"

4

Holbrook about various subjects until the next shift arrived on duty. Defendants Allen, Preece, and others allowed Roseberry and his cousin, Lisa Grubb, to have sex in a location where Holbrook could watch. (ECF No. 2 at 7). Roseberry had Lisa dye her hair, so that she looked like Holbrook's fiancée. The same sexual misconduct between Roseberry and Grubb happened again on the following day.

According to Holbrook, he met another inmate, Chris Adkins, who also claimed to be falsely imprisoned. Adkins revealed that Captain Reed was a family member of Adkins's girlfriend. (*Id.* at 8). Holbrook was moved to another cell and was told by the correctional officer escorting him that assaults and sexual misconduct happen at the WRJ, and that the correctional officer himself had engaged in similar activity. (*Id.*). Holbrook claims to have met at least one other inmate incarcerated at the WRJ, who was there on false charges concocted by law enforcement officers. In each case, the law enforcement officers were family members of the inmates' significant others. (*Id.*). Holbrook was ultimately placed on suicide watch. He attempted to grieve the instances of misconduct, or file a § 1983 complaint, but his requests to do so were ignored. (*Id.*).

Holbrook called Mr. Bartholomew at the Division of Corrections to report the sexual misconduct that he had witnessed. (ECF No. 2 at 8). Wallace and Fleming came to the WRJ to view footage after Holbrook's call to Mr. Bartholomew. Holbrook was told by a reliable source that Wallace and Fleming edited the film. (*Id.*). Endicott later apologized to Holbrook for all of the abuse he had suffered, and Endicott expressed his opinion that Aldridge, Fleming, Diamond, Reed, and Wallace had too much clout at the WRJ. (*Id.*).

Holbrook further claims that spit has been put in his food at the WRJ; that he is refused showers; and that he has been kept in segregation during the entire period of his detention. (*Id.* at 9). He states that he now has COVID-19. Holbrook indicates that he

"took a plea to 90 days for battery on an officer" in order to end the torture. He adds that he was scheduled to meet with his attorney on March 2, 2021, and was warned by Defendant Racer to keep his mouth shut about the abuse and sexual misconduct at the WRJ. (ECF No. 2 at 9). When Holbrook did not give Racer the "right answer," Defendant Diamond shoved Holbrook into his cell and then pushed him up the hall in full restraints, although Holbrook was complying. (*Id.*). Diamond threatened Holbrook to keep his mouth shut, or he was "going to get it" at his parole revocation hearing.

For relief, Holbrook seeks immediate transfer to another facility, punitive damages, compensation, mental health treatment, psychological counseling, a protective order for him and his fiancée against all of the defendants, and a full investigation. (ECF No. 2 at 5). He asks the court to "end the corruption," and uphold the law. He wants the defendants to stop violating the civil rights of other people. (*Id.* at 10). He requests "fair treatment" and a "[n]ew statute involving pandemic relief when police corruption takes place." (*Id.*).

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." To state a cause of action under § 1983, a plaintiff must allege facts showing that: (1) an official deprived the plaintiff of a federally protected civil right, privilege or immunity and (2) that the official did so under color of State law. 42 U.S.C. § 1983; *see also Perrin v. Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792 (D.S.C. Sept. 8, 2010). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983. Moreover, for an official to be liable under § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977)

6

(*quoting Bennett v. Gravelle,* 323 F. Supp. 203, 214 (D. Md. 1971)).

As currently written, Plaintiff's complaint fails to state a claim sufficient to withstand dismissal on initial screening. Plaintiff alleges false arrest by some of the defendants, and/or that they levied false charges against him. However, he includes no factual allegations to support a cause of action for false arrest or for false charges. Plaintiff does not state that his arrest was warrantless, and he does not contest the validity of any associated warrant. "[T]here can be no claim for false arrest where a person is arrested pursuant to a facially valid warrant." *Dorn v. Town of Prosperity,* 375 Fed. Appx. 284, 288 (4th Cir. 2010). Moreover, to the extent his claims are based on the *"wrongful institution of legal process," Wallace v. Kato,* 549 U.S. 384, 389–90 (2007), he must show "favorable termination" of the criminal charge against him. *Heck v. Humphrey,* 512 U.S. 477 (1994). In other words, that the charge was dismissed, or the conviction overturned. Plaintiff has not asserted any such factual allegations. To the contrary, he confirms that he pleaded guilty to the charge for which he was arrested. Plaintiff claims that his guilty plea was made under duress, but that is not an issue for this court to consider in this action. Before bringing such a claim in federal court, Plaintiff must exhaust the remedies available in state court. Once he has exhausted his state court options, Plaintiff can challenge his conviction or sentence in federal court, but must do so in a petition for a writ of habeas corpus—not in a civil rights complaint.

Plaintiff also complains that correctional officers at the WRJ have subjected him to cruel and unusual punishment in violation of the United States Constitution. The Eighth Amendment to the United States Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take

7

reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (*citing Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Farmer*, 511 U.S at 833 (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) ("To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). Thus, not every uncomfortable condition of confinement is actionable. *Rhodes,* 452 U.S. at 347. Ultimately, this prohibition "does not mandate comfortable prisons, and only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (*quoting Rhodes,* 452 U.S. at 347).

In order for Plaintiff to maintain a *prima facie* case that his conditions of confinement violated the Eighth Amendment, he must show both (1) the deprivation of a basic human need that was "sufficiently serious," when measured by an objective standard, and (2) that the responsible prison officials had a "sufficiently culpable state of mind." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238. To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted *an extreme deprivation. De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, [Plaintiff] must allege a serious or significant physical or emotional

8

injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler v. Waters,* 989 F.2d 1375, 1370–80 (4th Cir. 1993)).

To fulfill the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health or safety by the defendants. *Farmer*, 511 U.S. at 834. The Supreme Court explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Flores v. Stevenson,* Civil Action No. 2:11–cv–01278–TMC–BHH, 2012 WL 2803721 (D.S.C. May 11, 2012). Put simply, the staff at the WRJ had a sufficiently culpable state of mind if they were aware of an excessive risk of harm to Plaintiff's health or safety, but disregarded it. *See Wilson*, 501 U.S. at 298; *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)) ("[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.")

In addition to the legal principles set forth above, Plaintiff's complaint is governed

9

by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody **without a prior showing of physical injury**." (emphasis added). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" referenced by the Act need not be significant, but it must be more than *de minimis. See, e.g., Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312–13 (11th Cir. 2002); *Siglar v. Hightower,* 112 F.3d 191 (5th Cir. 1997); *Zehner v. Trigg,* 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2001), *quoting Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996) (internal quotation marks omitted).

Plaintiff does not include any factual allegations in his complaint that state a plausible claim against the defendants. He alleges that Defendants Fleming and Wallace altered surveillance video, but he did not witness the alleged alteration. He does not identify anyone who did witness the alteration, nor does he know what video segment was allegedly altered. Furthermore, he states no particular injury that he suffered as a result of the alleged alteration. Holbrook's claim against Defendant Aldridge is similarly lacking factual grounds. In essence, Holbrook claims that Aldridge is liable because he was the Administrator of the WRJ at the relevant time. Aldridge cannot be held liable on that

ground; rather, Holbrook must state facts demonstrating Aldridge's personal involvement in the alleged wrongdoing. Holbrook complains about various acts of corruption on the part of law enforcement and prison officials, such as allowing an individual who is not a correctional officer to dress in an officer's uniform, but fails to demonstrate any violation of *his own* constitutional rights, or any ensuing injury. Most of Holbrook's complaint is focused on his personal dislike of his fiancée's ex-husband with no real explanation as to how his rights were violated or how he was injured. Not every annoying or wrongful act constitutes a civil rights violation. Not every missed shower, inadequate meal, or placement in segregation rises to the level of a constitutional infringement. Moreover, a civil rights complaint fails to state a claim when it is based on conclusory allegations with no factual support.

In light of the governing standards and principles, Plaintiff must amend his complaint in order for the undersigned to complete a preliminary review of the merits. Without such an amendment, Plaintiff's complaint will be subject to a recommendation of dismissal. Therefore, Plaintiff is **ORDERED** to amend his complaint within **thirty (30) days** and cure the following deficiencies in pleading as indicated below:

1. Plaintiff must set forth a factual basis upon which the Court can conclude that *each one* of the defendants violated Plaintiff's civil rights. It is not enough for Plaintiff to say that his rights were violated. He must include specific facts to demonstrate a plausible claim against each named defendant. If Plaintiff asserts that he was the victim of a wrongful arrest, or of false charges levied against him, he must allege the necessary facts to state the elements of those claims as explained above.

2. Plaintiff states that he tried to file grievances and, in fact, did file grievances; however, he does not articulate what issues were raised in the grievances. Clearly, Plaintiff

has made sweeping claims against multiple individuals. Plaintiff needs to clearly state the nature of the grievances he allegedly filed, so that the court can determine whether or not Plaintiff exhausted his state and administrative remedies before filing this complaint.

3.     Plaintiff must identify the nature of the physical and emotional injuries he claims to have suffered as a result of the alleged wrongdoing.

**Plaintiff is hereby given notice** that a failure to amend the complaint as ordered will result in a recommendation that the complaint be dismissed for failure to state a claim under 42 U.S.C. § 1983 and/or for failure to prosecute under Fed. R. Civ. P. 41 and L. R. Civ. P. 41.1. **Plaintiff is also reminded** of his obligation to promptly notify the Clerk of Court of any change in his contact information.

The Clerk is instructed to provide a copy of this order to Plaintiff.

**ENTERED:** April 8, 2021

_____
Cheryl A. Eifert
United States Magistrate Judge