IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SHANE HOLBROOK,

        Plaintiff,

v.                                Case No. 3:21-cv-00170

CARL ALDRIDGE, et al.,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Plaintiff, Shane Holbrook, proceeding *pro se*, seeks injunctive relief against the "West Virginia Penal System" for failing to provide him with adequate time in the law library at the Martinsburg Correctional Center ("MCC"). **(ECF No. 41**). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the Motion for Injunctive Relief.

## I.   Relevant Facts

On March 15, 2021, Plaintiff filed the Complaint herein, alleging that the defendants violated various civil and constitutional rights held by Plaintiff. (ECF No. 2). Plaintiff's claims arise from his arrest in Huntington, West Virginia on or about

January 6, 2021 and his subsequent incarceration in the Western Regional Jail and Correctional Facility ("WRJ"), which is located in the Southern District of West Virginia. At the time Plaintiff filed the Complaint, he was still in custody at the WRJ. However, around the middle of April 2021, Plaintiff was transferred to MCC in Martinsburg, West Virginia, which is located in the Northern District of West Virginia. Plaintiff remains in that facility as of today's date.

On June 28, 2021, Plaintiff filed the instant Motion for Injunctive Relief. (ECF No. 41). In the Motion, Plaintiff claims that he has consistently requested time in MCC's law library, but has only received "less than 6 hours of library time" since his arrival. (*Id*. at 2). Plaintiff states that he has followed the proper procedures to receive time in the library and has filed grievances over the issue, but his problem with inadequate time in the library has not been corrected. Plaintiff asks the Court "to compel the West Virginia Penal System to either follow or enact a procedure that allows prisoners access to the law library." (*Id*. at 1).

On June 29, 2021, defendants employed by the West Virginia Division of Corrections responded to Plaintiff's Motion for Injunctive Relief. (ECF No. 42). The defendants note that they are, or were, correctional officers employed at the WRJ and do not have any control over the law library at MCC. Defendants point out that none of the named defendants have the power to institute any policies or take any action related to Plaintiff's alleged request for library time. As such, defendants argue, they are not proper parties to Plaintiff's Motion. (*Id*.).

## II.    **Standard of Review**

No plaintiff is automatically entitled to a preliminary injunction. Instead, "preliminary injunctions are extraordinary remedies involving the exercise of very far-

reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal citations and quotation marks omitted). "This standard becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of a preliminary injunction that merely preserves the status quo." [1] *Weast v. Entzel*, No. 3:19-CV-4, 2019 WL 540717, at *3 (N.D.W. Va. Jan. 8, 2019), *report and recommendation adopted,* No. 3:19-CV-4, 2019 WL 366857 (N.D.W. Va. Jan. 30, 2019) (citations omitted). To succeed on a request for injunctive relief, a plaintiff must make a "clear showing" that he is entitled to such relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *also Dewhurst v. Cnty. Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) (holding that a motion for preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (quoting *Winter*, 555 U.S. at 22). "In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances." *Kelly v. Hill*, No. ELH-20-2531, 2021 WL 3055615, at *17 (D. Md. July 19, 2021) (citing *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994)).

Courts in the Fourth Circuit consider the following four factors in determining whether a plaintiff has met the standard for injunctive relief:

> (1) the movant's likelihood of success on the merits; (2) the likelihood that the movant will suffer irreparable harm in the absence of preliminary injunctive relief; (3) whether the balance of equities tip in the movant's favor; and (4) whether an injunction is in the public interest.

---

[1] The undersigned considers Plaintiff's motion under the preliminary injunction standard, as he has not filed an action against the appropriate official at the West Virginia Division of Corrections, or the Martinsburg Correctional Center, seeking a permanent injunction.

*Winter,* 555 U.S. at 20. As the moving party, the plaintiff bears the burden of establishing that each factor weighs in his favor and justifies the relief requested. *See Granny Goose Foods, Inc. v. Bhd. of 184 Teamsters and Auto Truck Drivers Local No. 70,* 415 U.S. 423, 441 (1974). "These factors are not, however, all weighted equally." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). To the contrary, the threshold determination is whether the plaintiff has shown that irreparable harm is likely to occur if an injunction is not granted. *Id.* If the plaintiff fails to demonstrate this factor, his quest for injunctive relief comes to an end. In *Scotts v. United Industries Corp,* the Fourth Circuit describes how the analysis generally proceeds:

> When deciding whether to grant a preliminary injunction, the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied; if such a showing is made, the court must then balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. If the balance of the hardships tips decidedly in favor of the plaintiff, then typically it will be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. But if the balance of hardships is substantially equal as between the plaintiff and defendant, then the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success.

*Scotts,* 315 F.3d 264, 271 (4th Cir. 2002) (internal quotations and citations omitted). A showing of irreparable harm requires the likelihood of an injury that is both actual and immediate. *Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983). The injury must be one that cannot be adequately satisfied with a monetary award, or accurately calculated, or that involves other rare and exceptional circumstances that justify the extraordinary relief of an injunction. *Hughes*, 17 F.3d at 693-94.

## III.  Discussion

Applying the relevant principles to Plaintiff's request for injunctive relief, the undersigned **FINDS** that Plaintiff fails to provide sufficient grounds to merit such relief. To begin, Plaintiff does not carry his burden to show "that in the absence of a preliminary injunction," he is "*likely* to suffer *irreparable* harm before a decision on the merits can be reached." *Winter*, 755 U.S. at 22 (emphasis added). Indeed, Plaintiff does not articulate any specific harm that he has incurred, or will incur, if he is not permitted additional time in the law library. To date, Plaintiff has not missed any deadline in this case, nor has he been sanctioned in any way for failing to submit a document, or for filing a document that is not supported by legal citations. In other words, he does not identify *any* difficulty in accessing the court related to the lack of law library time.

Furthermore, Plaintiff has not clearly shown that he is likely to succeed on the merits of his claim. "To demonstrate a likelihood of success on the merits, '[a] plaintiff need not establish a certainty of success,' but must make a clear showing that he is likely to succeed at trial." *Courtland Company, Inc. v. Union Carbide Corporation*, No. 2:21-cv-00101, 2021 WL 1255416, at *9 (S.D.W. Va. Apr. 5, 2021) (quoting *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017)).

In *Bounds v. Smith*, 430 U.S. 817, 821 (1977), the Supreme Court held that prisoners have a constitutional right to meaningfully and effectively access the courts. To satisfy the prisoner's constitutional right, correctional facilities have an obligation to provide adequate law libraries, or assistance from individuals trained in the law. *Bounds,* 430 U.S. at 828 (holding that prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing them with adequate law

libraries or adequate assistance from persons trained in the law.") However, as the Supreme Court later clarified, the obligation is not all-encompassing and certainly does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

In *Lewis*, the Court emphasized that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Id.* at 351; *see, also, Murphy v. Inmate Sys. Mgmt., Inc.*, No. 1:03-0170, 2008 WL 793631, at *10 (S.D.W. Va. Mar. 20, 2008) ("[P]risoners do not have a right per se to a law library or legal assistance."). Instead, according to the *Lewis* Court, *Bounds* merely reaffirmed a prisoner's right to meaningfully access the courts. *Lewis*, 518 U.S. at 351. According to the *Lewis* Court, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* (citation omitted). The *Lewis* Court added that "[t]he tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original).

The Supreme Court further explained that in order for a prisoner to bring a plausible claim of denial of access to courts, the prisoner must demonstrate actual injury or "that alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis,* 518 U.S. at 351. The Court provided some examples of a plausible claim: "[A prisoner] might show, for example, that a complaint

he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.; see also Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (recognizing that plaintiff bringing denial of access to courts claim must allege claim with specificity and identify an actual injury resulting from official conduct); *Michau v. Charleston Cty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006) (rejecting denial of access claim where complaint did "not specifically explain how [plaintiff] was injured by any limitations on his access to the law library."). At least two federal district courts within the Fourth Circuit have rejected arguments that the right to access the courts is violated by limiting an inmate's use of the law library where no actual harm from the time limitation is shown. *See Watts v. Johnson*, No. 7:07-cv-00323, 2007 WL 2110341, at *1-*2 (W.D. Va. July 18, 2007); *Sterling-Earl v. Gray*, No. 7:06CV00196, 2006 WL 1318367, at *5-6 (W.D. Va. May 15, 2006); *Skundor v. Painter*, No. 5:00-0463, 2002 WL 32334397, at *4-6 (S.D. W. Va. Sept. 26, 2002); *see also Benjamin v. Kerik*, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000) ("In order for an inmate to show that the library or legal assistance program hindered his efforts to pursue a civil legal claim, he must show that he encountered more than mere delay or inconvenience.") Conclusory allegations are insufficient to maintain a claim based on the lack of access to courts.

In the absence of the likelihood of irreparable harm, as well as a clear showing that Plaintiff is likely to succeed on the merits of his claim, the undersigned **FINDS** that Plaintiff does not satisfy the standards for issuance of a preliminary injunction.

Moreover, if Plaintiff wishes to pursue an action against officials of the Martinsburg Correctional Center for limiting his access to the law library, that action must be filed in the United States District Court for the Northern District of West Virginia, as that is the proper venue for such a claim.

## IV.    **Proposal and Recommendations**

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding United States District Judge accept and adopt the findings herein and **RECOMMENDS** that Plaintiff's Motion for Injunctive Relief, (**ECF No. 41**), be **DENIED.**

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to

the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, counsel of record, and any unrepresented party.

**FILED:**  August 26, 2021

Cheryl A. Eifert
United States Magistrate Judge

9